**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Oliver King, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 13983 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| Shelbie Porter, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Porter and Huerta-Perez's motion for summary judgment is before the Court. For the reasons discussed below, the Court grants the motion.

**Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The procedures set out in Local Rule 56.1 "serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019) (citation omitted). The Court considers only facts presented in compliance with Local Rule 56.1. *Matthews v. Donahoe*, 493 F. App'x 796, 799-800 (7th Cir. 2012) (allowing district court to strictly enforce its local rules) (collecting cases).

Local Rule 56.1 requires the moving party to submit a motion, supporting memorandum of law, and statement of material facts accompanied by cited evidentiary material. N.D. Ill. L.R. 56.1(a), (d). The opposing party then must respond to the moving party's motion and statement of facts. N.D. Ill. L.R. 56.1(b), (e). The opposing party's response "must consist of numbered paragraphs corresponding to the numbered paragraphs in the [movant's] statement[.]" N.D. Ill. L.R. 56.1(e)(1). "Each response must admit the asserted fact, dispute the asserted fact, or admit in

part and dispute in part the asserted fact." N.D. Ill. L.R. 56.1(e)(2). The opposing party also "must cite specific evidentiary material that controverts the fact[.]" N.D. Ill. L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party wants the Court to consider facts not set forth in the movant's statement of facts or properly presented in response to the movant's facts, the opposing party must submit a separate "statement of additional material facts." N.D. Ill. L.R. 56.1(b)(3). A litigant's *pro se* status does not excuse him from compliance with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001).

Defendants served King with a "Notice to Unrepresented Litigants Opposing Summary Judgment" as required by Local Rule 56.2. *See* Dkt. 111. The Notice explained the procedures for opposing summary judgment. King separately responded to each of Defendants' facts (Dkt. 119), but his responses largely lack citation to admissible evidence refuting the facts. King's responses also are largely argumentative or conclusory. Consequently, many of King's responses are insufficient to create a disputed issue of fact. King also attempts to introduce additional facts at various points in response to Defendants' statement of facts, but he did not submit a separate statement of additional facts. Any additional facts that are not fairly responsive to Defendants' facts are not properly before the Court.

**Background**

Plaintiff Oliver King is a restricted filer in this district. *See In re Oliver King*, No. 19 C 1719 (N.D. Ill.). The Executive Committee reviewed the complaint in this case and allowed it to be filed "as to [King's] claim that certain named defendants are deliberately indifferent to his need for medical care." *Id.* at Dkt. 8. After considering the restrictions on King's ability to initiate civil

litigation as well as the facts alleged in his amended complaint, this Court allowed a claim to proceed past screening against "Nurses Porter and [Huerta-]Perez concerning their purported failure to provide necessary care for King's knee and ankle pain[.]" Dkt. 19, *see* Dkt. 11.

King was detained at the Lake County Jail from June 12, 2023, to August 25, 2023. Dkt. 109, Defs. Stmt. of Undisputed Facts (DSOF) ¶¶ 12, 87. Defendant Valeria Huerta-Perez met with King on June 12, 2023, and completed an initial health screening. DSOF ¶ 13. As relevant to the claim in this case, King told Huerta-Perez that he had a "rod" in his left knee and a "rod" in his right ankle. Dkt. 119, Pl. Resp. to DSOF ¶ 15. He also told Huerta-Perez that he took Gabapentin for nerve pain from a 2021 accident and surgery. DSOF ¶ 16. Huerta-Perez recorded in King's patient history that his "movement" was "unremarkable." DSOF ¶ 14. She also noted that King did not have any medical, mental health, or other conditions that required accommodation. DSOF ¶ 18. Huerta-Perez flagged, however, that King would require "routine" chronic care. DSOF ¶ 15. Huerta-Perez scheduled a follow-up appointment. *See* DSOF ¶ 25 (citing Ex. A to DSOF at p. 92). A non-defendant medical provider subsequently prescribed King 400 mg of ibuprofen twice a day as needed for five days. DSOF ¶ 20.

On June 20, 2023, King submitted a healthcare service request complaining of nerve pain. DSOF ¶ 22. The next day, he was examined by a non-defendant medical provider who determined that King had "no deficit in ambulation or movement." DSOF ¶ 23. King was prescribed 600 mg of ibuprofen twice day as needed for seven days. DSOF ¶ 24.

On June 30, 2023, King was seen for complaints of right ankle swelling and pain. DSOF ¶ 27. Notes from the encounter reflect that King reported he "hadn't been able to ambulate appropriate" since his surgery "two yrs ago[.]" DSOF ¶ 27 (citing Ex. B to DSOF at pp.38-39). The medical professional who examined King observed "mild swelling to the right ankle" but also

noted, "Patient seen walking w/o difficulty." DSOF ¶ 28 (citing Ex. B to DSOF at pp.38-39). X-rays of the right ankle were ordered, and 600 mg of ibuprofen was continued. DSOF ¶ 29.

On July 6, 2023, King submitted a healthcare service request complaining of ankle pain, advising that "the Tylenol isn't helping," and requesting "a shoe with support" and "nerve medication for nerve pain." DSOF ¶ 31 (citing Ex. C to DSOF at p. 64). In response, King was prescribed 325 mg acetaminophen as needed twice a day. DSOF ¶ 33. Six days later, he was seen at sick call where the person attending to him recorded that King reported "intermittent pain 9/10" in his feet "due to needing orthopedic shoes and not being on Gabapentin," but King had been observed "ambulat[ing] independently in pod with a steady gait" and "appear[ed] in no distress . . . at the moment." DSOF ¶¶ 35, 36 (citing Ex. B to DSOF at p.32).

King fell in the shower on July 13, 2026. DSOF ¶ 37. Notes made by the responding medical personnel reflect:

> Upon arrival patient seen lying on floor. Patient stated he slipped in the shower [and] that he was unable to get up due to previous surgery in his knee and ankle . . . . Patient able to move upper and lower extremities . . . . Right ankle has slight swelling, no redness, no change in temperature. Patient able to transfer himself over to wheelchair. Patient continued to complain of right ankle pain. All vitals WNL. MD to be notified.

DSOF ¶ 39 (cleaned up). That same day, King was prescribed 800 mg ibuprofen "until x-ray results are back," and he was provided a wheelchair. DSOF ¶¶ 41, 42.

King received an x-ray of his right ankle on July 18, 2023. DSOF ¶ 44. The x-ray revealed: "No acute fracture or dislocation. The osseous structures appear intact with tibia fixation hardware transfixing the prior fracture present. Soft tissues are unremarkable. . . . No acute osseous abnormality." DSOF ¶¶ 45, 46 (citing Ex. B to DSOF at p.45).

King "fell out of the shower" on July 25, 2023. DSOF ¶ 49. Defendant Shelbie Porter responded to the incident as an assistant to a registered nurse who is not a defendant to this lawsuit. DSOF ¶ 50; *see* Ex. B to DSOF at p.6. Notes made by the lead nurse reflect: "Patient reports tripping when getting out of the shower . . . Patient denies new injuries. 24 hr bed rest." DSOF ¶ 51. Check marks appear in boxes next to "moves all extremities" and "ambulatory/walking." DSOF ¶ 52 (citing Ex. B to DSOF at p.5).

On July 26, 2023, King reported that he was in "dire pain" because his "meds perpetually being cut off[.]" DSOF ¶ 55 (citing Ex. C to DSOF at p.47). The following day, a nurse visited King in his cell. DSOF ¶ 55. Notes from the encounter reflect:

> Patient seen for sick call. Patient laying on his side stated he was unable to get out of bed. Patient was able to sit up without difficulty. Patient states he is in 10/10 pain in his left knee and right ankle . . . Patient has no swelling and no change in skin temperature. Patient has limited ROM in right knee due to increased pain with flexion. Patient not willing to ambulate during assessment due to pain. Patient stated he use to get Gabapentin on the outside for his chronic pain . . . . MD notified.

DSOF ¶ 56 (citing Ex. B to DSOF at p.29). The notes also reflect "no flexion of the left knee." *See* Ex. B to DSOF at p.29. A jail physician prescribed King 600 mg of ibuprofen for 10 days, and an x-ray of King's left knee was ordered. DSOF ¶ 58.

King was assessed again on August 4, 2023, and requested Tylenol rather than ibuprofen for his pain. DSOF ¶¶ 62, 63. King rated his pain 5/10. DSOF ¶ 64. The medical provider who performed the assessment reported, however: "Patient was in no distress at the time. [W]as able to move freely." DSOF ¶ 64. King was prescribed 325 mg of Tylenol twice a day as needed, and "worker shoes for support of previous injury" were ordered. DSOF ¶¶ 67, 68.

King subsequently complained that neither Tylenol nor ibuprofen were effectively managing his pain. DSOF ¶ 70. He asked to see a doctor and asked when he would receive an x-

ray of his "right knee." DSOF ¶ 72. In response, King was seen at sick call where he rated his pain at 7/10 in his ankle and 6/10 in his knee. *See* DSOF ¶ 73 (citing Ex. B to DSOF at pp.20-21). The reporting nurse observed "no apparent distress," "no swelling no redness," and movement in King's "ankle and toes." DSOF ¶ 74. The nurse was unable to assess King's gait because he was in a wheelchair. *See* Ex. B to DSOF at p.20. King was prescribed 500 mg of Tylenol to be taken twice a day for two weeks. DSOF ¶ 75.

An x-ray of King's left knee was completed on August 15, 2023. DSOF ¶ 76. The radiology report reflects: "There are fixated fracture involving left distal fibula and proximal tibia with no displacement. The joint shows no dislocation. There is associated joint effusion. Surgical fixation plates and screws appear radiographically intact." DSOF ¶ 71 (citing Ex. B to DSOF at p.44).

King did not receive the support shoes before his release from Lake County Jail on August 25, 2023. *See* DSOF ¶¶ 79, 81. He also complained that the showers were unsafe because he had to "hop[]" on his "bad knee to get inside over the hump" and that he needed Gabapentin to manage his pain. DSOF ¶ 80. Despite King's self-reported limitations, jail medical staff regularly reported that he was observed with a steady gait. *See* DSOF ¶¶ 26, 30, 32, 43, 47, 48, 54, 61, 69, 71, 83.

Except for the two specific occasions discussed above—*i.e.*, the June 12, 2023 intake interview by Defendant Huerta-Perez and the July 25, 2023 assist by Defendant Porter—Defendants encountered King only when they distributed medications to King that had been prescribed by other jail medical providers. DSOF ¶ 86.

King initiated this lawsuit not long after his release from custody. He brought the operative complaint against twelve named defendants, but the alleged facts suggested a basis for liability against only Nurses Huerta-Perez and Porter. *See* Dk. 19, 20. As to the Defendant nurses, King

alleged that he told Nurses Porter and Huerta-Perez[1] during intake that "he was in pain and had special medical needs such as gabapentin nerve medication and orthopedic shoes with ankle support." Dkt. 20, pg. 8 (cleaned up). He also allegedly showed the nurses "large scars" and asked for a "low bunk low tier" permit. *Id.* King did not receive the items he requested and, as a result, alleged that he was "denied proper medical attention." *Id.* Based on these allegations, the Court allowed a claim to proceed against Nurses Huerta-Perez and Porter concerning their purported failure to provide necessary care for King's knee and ankle pain. Dkt. 19. The Court dismissed all other defendants and claims.

Defendants Huerta-Perez and Porter's motion for summary judgment is before the Court. Dkt. 107. Defendants argue that they are entitled to summary judgment because (1) they could not prescribe medications or otherwise alter King's care plan; (2) they provided constitutionally adequate medical care based on professional judgment; and (3) King was not entitled to the treatment plan or medications of his choice. Dkt. 108.

**Legal Standard**

Summary judgment is warranted where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The opposing party "may not rest upon mere allegations in the pleadings[.]" *Beardsall v. CVS*

[1]The Court noted in the March 18, 2024 screening order that King did not name Perez in the caption of the amended complaint, but a Wellpath nurse named Valeria Huerta-Perez had been identified as a defendant to the original complaint and her name appeared on the docket. The Court therefore considered the facts alleged against Perez.

*Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (quoting *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001)). The opposing party will defeat summary judgment only if he makes "a sufficient showing on every element of his case on which he bears the burden of proof[.]" *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019).

The Court considers relevant, properly supported evidence in the light most favorable to the opposing party. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021). The Court also draws "reasonable inferences from the evidence" in the opposing party's favor, but not speculative inferences. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

**Discussion**

Liability under section 1983 is based on personal responsibility. *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). Thus, to survive summary judgment King was required to produce evidence showing that each defendant personally deprived him of a constitutional right.

The Fourteenth Amendment governs claims of inadequate medical care while in pretrial detention. *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 346–47 (7th Cir. 2018)). Claims are considered under an objective-reasonableness standard. *Id.* To demonstrate objective unreasonableness, the plaintiff bears the burden of showing (1) "that the defendant acted purposefully, knowingly, or recklessly when considering the consequences of [her] response to the medical condition at issue in the case," and (2) "the challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances." *Id.* (citations omitted).

Evidence shows that medical professionals at the Lake County Jail routinely evaluated King's medical needs. King's health was monitored, his gait was regularly observed and assessed, and his medications were adjusted. Defendant Nurses Huerta-Perez and Porter played minor roles

in his care. Huerta-Perez conducted King's intake interview during which she recorded King's answers to questions along with her observations. She made recommendations and, based on her notes, other providers determined a course of care. Porter, accompanied by a lead nurse, responded to King's fall in a shower. Both Huerta-Perez and Porter distributed medications prescribed by other providers. King would have preferred different care or greater consideration of his self-reported limitations, but the Constitution does not guarantee an inmate his preferred care. *See McClendon v. Lochard*, No. 19-CV-373, 2021 WL 3172982, at *8 & n.3 (N.D. Ill. July 27, 2021) ("Pretrial detainees do not have a constitutional right to dictate their medical care."). The Constitution mandates only objectively reasonable care. *Id.*; *James*, 959 F.3d at 318.

King's opposition to Defendants' motion for summary judgment consists of six arguments. First, King disagrees with Defendants' assertion that they were not authorized to prescribe the pain medication King requested (Gabapentin) or to alter his treatment plan. Dkt. 118, 120.[2] But he submitted no evidence refuting Defendants' assertion. King's mere belief that Defendants could prescribe a specific medication or other care is not enough to create a disputed issue of fact. *DiFranco v. City of Chicago*, __ F.4th __, 2026 WL 2279998, at *6 (7th Cir. Aug. 7, 2026) (explaining that speculation does not create a disputed issue of fact; non-movant "must identify evidence which actually calls the [movant's] factual account on a particular point into dispute").

Second, King asserts that Defendant Huerta-Perez "never" evaluated his "motion and movement." Dkt. 118. He says he showed Huerta-Perez the scars on his legs, told her he was in "dire need" of nerve and pain medication, had taken Gabapentin before he was taken into custody, and was a fall risk because of his leg injuries. *Id.* He requested a low-bunk permit. *Id.* King,

[2]King submitted three briefs in opposition to Defendants' motion. Dkt. 118, 120, 121. Two of the briefs are nearly identical. Dkt. 120, 121. The Court therefore cites only to Dkt. 118 and Dkt. 120.

however, submitted no evidence calling into question Huerta-Perez's assessment that on June 12, 2023, his "movement" was "unremarkable" and that he did not require an "accommodation."

King subsequently fell in the shower area on July 13, 2023, and again on July 25, 2023, but his falls are not enough to show that Huerta-Perez's assessment of his condition at intake was not based on her professional judgment. *See Williams v. Patton*, 761 F. App'x 593, 597 (7th Cir. 2019) (explaining (in Fourth Amendment context) that evidence must show medical provider's decision was such "a significant departure from professional norms" that it was objectively unreasonable). Here, evidence shows that King navigated the jail environment without incident for a month before his falls. X-rays showed that his leg and ankle injuries had been surgically repaired and the repairs were intact. He also was observed walking with a "steady" gait on many occasions, and his ability to walk independently was re-evaluated on no fewer than three occasions between Huerta-Perez's intake assessment and King's falls. In light of the record, King's insistence that Huerta-Perez did not properly assess his abilities is not enough to defeat summary judgment. *See, e.g., Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006) ("Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient [to show deliberate indifference].").

Third, King suggests that Huerta-Perez was required to "immediately" refer him to a physician to avoid running afoul of the Constitution. Dkt. 120. King is mistaken. King's medical records reflect that Huerta-Perez scheduled King for a follow-up exam as part of her intake duties and that King was regularly examined by medical professionals following intake. The fact that a comprehensive physical exam did not occur as quickly as King might have liked or was not conducted by a physician is not evidence that Huerta-Perez's conduct violated the Fourteenth Amendment. *See McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018) (explaining that courts

"focus on totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable").

Fourth, King is dissatisfied with Defendant Porter's purported response to his complaints of pain. Dkt. 118. According to King, Porter showed "no concern" for his health when he complained about pain during med-pass and she allegedly told King to "shut up" after his fall. Porter's bedside manner might not have been to King's liking, but care that lacks compassion does not necessarily violate the Constitution. Instead, the record shows that Porter simply assisted a lead nurse after King's fall, and any other interactions Porter had with King occurred while she was distributing medications prescribed by other healthcare professionals. King submitted no evidence that Porter had the authority to deviate from her assigned duties or that she otherwise failed to convey information to decisionmakers that was not already in King's medical records.

Fifth, King complains that he did not receive orthopedic shoes while at the Lake County Jail, but the record contains no evidence that Defendants Huerta-Perez or Porter were responsible for any delay in obtaining the shoes.

Sixth, King complains that the Defendants failed to prevent "avoidable pain," but the fact that his pain was not managed to his satisfaction is not evidence that Defendants' conduct violated the Constitution. *See, e.g., Cooper v. Dombeck*, No. 25-1686, 2026 WL 1412593 at *3 (7th Cir. May 20, 2026) (explaining that the Constitution "does not entitle incarcerated patients to their preferred pain medication or require doctors keep them completely pain-free") (internal quotation marks and citation omitted).

Finally, and for the sake of completeness, King references the "ADA" and "accommodation" throughout his briefing, but a claim under the Americans with Disabilities Act

(ADA) falls outside the allowable scope of this lawsuit, which was defined as "claims stemming from the jail medical staff's purported failure to adequately treat pain caused by injuries to King's knee and ankle." *See* Dkt. 11. Defendants Huerta-Perez and Porter also are not proper defendants to a claim under the ADA. *See Keeling v. Lake Cnty.*, No. 23-cv-3442, 2024 WL 197210, at *3 n.1 (N.D. Ill.) ("The only proper defendant for ADA [] claims in the carceral context is the relevant governmental department or agency or its director, acting in his or her official capacity.") (collecting cases). Accordingly, any claim under the ADA is dismissed.

In sum, King offered no evidence demonstrating that the care he received at the Lake County Jail was objectively unreasonable. *See Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019) ("just because the staff declined to provide [detainee] with his desired prescription pain medicine or the comfort of an extra mattress does not mean that the course of treatment was objectively unreasonable").

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion [107] for summary judgment. Final judgment will be entered in Defendants' favor on King's claim under 42 U.S.C. § 1983. Any claim under the Americans with Disabilities Act is dismissed. Civil case terminated.

**SO ORDERED.**

**ENTERED: August 13, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**